**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Patrick Taylor, | |
| Plaintiff, | Civil Action No. 1:25-cv-12429 |
| v. | |
| City of Rolling Meadows, et al., | Hon. Manish S. Shah |
| Defendants. | |

**DEFENDANT MASTER SARGEANT STEVEN CARDONA'S
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION………………………………………………………………………...1

BACKGROUND……………………………………………………………………………….2

       *Lovings Murder Investigation*…………………………………………………………..2

       *Post-Trial Proceedings*…………………………………………………...……………4

LEGAL STANDARD……………………………………………………………………….5

ARGUMENT………………………………………………………………………...6

I.       Plaintiff Lacks Standing to Sue M Sgt. Cardona Because Cardona
       Did Not Cause His Injuries……………………………………………………………6

II.     Plaintiff Has Not Stated a Claim Against M Sgt. Cardona………………………………8

       A.  Plaintiff has not adequately alleged M Sgt. Cardona's personal involvement……8

       B.  Plaintiff has not stated a due process claim against M Sgt. Cardona……………10

       C.  Plaintiff has not stated a Fourth Amendment claim against M Sgt. Cardona…….12

       D.  Plaintiff has not stated an equal protection claim against M Sgt. Cardona………13

       E.  Plaintiff has not stated a conspiracy claim against M Sgt. Cardona……………..14

       F.  At a minimum, M Sgt. Cardona is entitled to qualified immunity………………14

CONCLUSION……………………………………………………………………...15

**INTRODUCTION**

Plaintiff was convicted of a 2006 murder for which he maintains his innocence. On the "eve" of his 2023 retrial, prosecutors disclosed thousands of pages of previously undisclosed documents originating from the Rolling Meadows Police Department ("RMPD"), which had investigated the murder. Arguing that the previous nondisclosure constituted police and prosecutorial misconduct, Plaintiff moved to dismiss the charges against him. On October 11, 2023, the charges were dropped, and Plaintiff was released from prison after 16 years. Plaintiff now seeks civil damages, naming fourteen law enforcement defendants whom he alleges played a role in the improper withholding of that exculpatory evidence.

Plaintiff's only allegation against Illinois State Police ("ISP") Master Sargeant Steven Cardona is to list him amongst a group of Defendants whom Plaintiff alleges withheld the exculpatory evidence produced by RMPD in 2023. Plaintiff's inclusion of M Sgt. Cardona in this lawsuit is apparently based on Plaintiff's mistaken belief that M Sgt. Cardona was an officer of RMPD—but he was not. M Sgt. Cardona was an ISP officer who participated in just six days of investigation through the Major Case Assistance Team ("MCAT"), a multi-jurisdictional task force which is activated to assist local law enforcement agencies on major crime investigations. After six days investigating the underlying murder, the task force was deactivated, the investigation was left to RMPD, and M Sgt. Cardona's involvement in the investigation ended. Plaintiff had not even been identified as a subject of interest before M Sgt. Cardona departed the case, and ISP retained no investigative files whatsoever.

In this lawsuit, Plaintiff brings claims against all Defendants under Section 1983 for due process, Fourth Amendment, and equal protection violations; failure to intervene; and conspiracy. Plaintiff's claims against M Sgt. Cardona, based upon the sole, conclusory allegation that he was

somehow responsible for withholding exculpatory evidence, cannot stand under either Rule 12(b)(1) or 12(b)(6), and M Sgt. Cardona should be dismissed as a defendant for several reasons.

*First*, under Rule 12(b)(1), Plaintiff lacks standing in fact to bring his claims against M Sgt. Cardona—because neither M Sgt. Cardona nor ISP had no role in investigating or prosecuting Plaintiff or in withholding any evidence, Plaintiff's injuries are not fairly traceable to him.

*Second*, under 12(b)(6), M Sgt. Cardona must be dismissed because Plaintiff's allegations are conclusory and he has not alleged that M Sgt. Cardona was personally involved in any constitutional violation (as required for Section 1983 claims). Plaintiff has therefore not adequately pled the required elements of any claims against him. Moreover, M Sgt. Cardona is at least entitled to qualified immunity because Plaintiff has not adequately alleged that he violated any clearly established right. M Sgt. Cardona should be dismissed accordingly.

## BACKGROUND

*Lovings Murder Investigation*

On August 19, 2006, Rolling Meadows Police Department ("RMPD") responded to a call for shots fired inside of a Rolling Meadows apartment. *See* Ex. 1, ISP Case Action Report.[1] When responding officers arrived at the scene, they found Marquis Lovings lying on the floor unresponsive; Lovings later died of his injuries. *Id.* at 2. The Major Case Assistance Team ("MCAT"), a multi-jurisdictional task force, was temporarily activated on August 20, 2006, to assist in the initial stages of the investigation of the murder. *Id.* ISP M Sgt Cardona and another ISP Officer were assigned to the MCAT team. *Id.* MCAT deactivated its investigation assistance

---

[1] When considering a factual challenge to standing under Rule 12(b)(1), a Court may consider evidence extrinsic to the complaint. *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). Counsel has conferred with ISP and will file an declaration from ISP records personnel authenticating this document and explaining that it is the only document relating to this investigation in ISP's possession at the earliest opportunity.

on August 26, 2006. *Id.* RMPD continued the investigation thereafter. *Id.* All MCAT records were left with RMPD (*id.* at 1 ("No" is marked under "Evidence Being Hold")), and ISP and M Sgt. Cardona had no further involvement in the investigation. *See, generally, id.*

Plaintiff alleges that two witnesses were interviewed between August 20, 2006, and August 26, 2006—Juanito Gonzalez and Elemuel Huizar. Dkt. 1 ¶¶ 29-56. Plaintiff alleges that Defendant Palatine Police Officer Tim Sharkey "coercively interrogated Mr. Gonzalez to extract a (false) confession" (*id.* ¶ 41) and "tried to fabricate a false statement for Gonzalez implicating someone else in the murder" (*id.* ¶ 44) but "failed." *id.* ¶ 45. Plaintiff does not allege that M Sgt. Cardona participated in either interview—or any other witness interview. *See generally* Dkt. 1. M Sgt. Cardona is not mentioned in the MCAT investigative reports (which he did not author) concerning either interview. *See* Ex. 2, Sept. 16, 2025, Pet. for Cert. of Innocence at its Exs. 1, 4, *People v. Taylor*, Case No. 07CR1846201 (Cook Cty. Cir. Ct.) (hereinafter, "*Taylor*").[2] Likewise, neither affidavit submitted by these interview subjects in support of Plaintiff's petition for a certificate of innocence mentions M/Sgt. Cardona whatsoever. *See id.* at its Exs. 2, 5.

Plaintiff alleges that the "case went cold for nearly a year" (*id.* ¶ 56) until he was arrested in August 2007, when "Defendants set out to frame" him for Lovings' murder (*id.* ¶ 57) by producing false witness statements (*id.* ¶¶ 58-84, 90-94) and conducting unduly suggestive identification procedures. *Id.* ¶¶ 85-89. Plaintiff alleges that he was charged with Lovings' murder "[b]ased on the fabricated evidence…and withheld unduly suggestive identification procedures."

---

[2] In assessing motions to dismiss under *either* Rule 12(b)(1) or 12(b)(6), this court may take judicial notice of the contents of state court filings because they are public records "not subject to reasonable dispute." *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012); Fed. R. Evid. 201(b)(2); Fed. R. Evid. 902(6). For purposes of M Sgt. Cardona's 12(b)(6) motion, Plaintiff's criminal filings are not offered for the truth of the matters asserted therein, but only to show the arguments and evidence upon which Plaintiff relied in those proceedings. For space, additional exhibits to Plaintiff's criminal filings not referenced herein are not attached but can be provided to the Court upon request.

3

*Id.* ¶ 95. He alleges that "[b]etween 2007 and 2011, Defendants actively took steps to conceal their misconduct while withholding exculpatory evidence that would have ended Mr. Taylor's criminal prosecution" and that at "trial, Defendants testified falsely and concealed exculpatory evidence as part of their ongoing conspiracy to frame Mr. Taylor for a crime he did not commit." *Id.* ¶ 98-99. But again, MCAT, ISP, and M Sgt. Cardona were long gone by 2007. Ex. 1. Plaintiff was convicted of Lovings' murder in 2011 and was sentenced to life in prison. *Id.* ¶ 100-01.

*Post-Trial Proceedings*

In 2017, the Illinois Appellate Court granted Plaintiff a retrial following the Illinois Supreme Court's decision in *People v. Lerma* because the trial court had precluded him from offering expert testimony on the reliability of eyewitness identifications. *See generally, People v. Taylor*, 2016 IL App (1st) 113492-UB (*citing* 2016 IL 118496, ¶ 32, 47 N.E.3d 985). Before the retrial occurred, Plaintiff, through his present counsel, moved for additional discovery, asserting that law enforcement reports contained references to video footage and photographs which had not been disclosed to him by the prosecution. *See* Ex. 3 Mar. 14, 2023, Mot. for Addt'l. Discovery ¶¶ 3-11, *Taylor*. The reports stated that each of these items of evidence had been "turned over to" or "impounded into evidence at" RMPD. *Id.* Plaintiff did not allege that MCAT itself, ISP, or any other agency *other* than RMPD retained any this evidence. *Id.* On April 6, 2023, the Court granted the motion and ordered RMPD (and not MCAT, ISP, or any other agency) to produce its full investigative file into Lovings' murder. *See* Ex. 4, Apr. 6, 2023, Order, *Taylor*.

On April 12, 2023, RMPD produced thousands of pages of previously unproduced documents relating to Plaintiff's prosecution. Dkt. 1 ¶¶ 103-06; *see also id.* ¶ 104 (photograph showing files labeled "Investigative & Forensic Reports" of the "Rolling Meadows Police," dated Aug. 19, 2006). Plaintiff alleges that these documents contained substantial exculpatory evidence.

4

*Id.* ¶¶ 107-58. Plaintiff brought a supplemental motion to dismiss on the basis that "the State violated Mr. Taylor's due process rights by withholding exculpatory and impeachment evidence." *See* <u>Ex. 5,</u> Sept. 28, 2023, Supp. to Mot. to Dismiss at 1, *Taylor*. Nowhere in his brief did Plaintiff assert that M Sgt. Cardona or ISP had any part in any constitutional violation—or reference him whatsoever. *Id.*

On April 24, 2023, Plaintiff moved for additional discovery, asserting that his inspection of the RMPD documents revealed that "Detective Cook maintained electronic files regarding the Lovings[] investigation;" that he "and potentially other members of [RMPD], possessed electronic files relating to alternate suspects," and that "Detective Cook, and others in [RMPD] engaged in electronic communication regarding the underlying Lovings[] investigation." <u>Ex. 6</u>, Apr. 24, 2023, Mot. for Addt'l. Discovery, ¶ 8, 12. Plaintiff alleged that the RMPD files did not contain these apparent electronic files. *Id.* ¶ 9. Plaintiff did not mention M Sgt. Cardona or ISP in this filing, nor did he allege that any agency other than RMPD withheld any evidence. *See, generally, id.* Plaintiff does not allege that there are any further potentially exculpatory documents *currently* being withheld by RMPD or anyone else. *See generally* Dkt. 1.

On October 11, 2023, the charges against Plaintiff were dropped and he was released from prison after 16 years. Dkt. 1 ¶ 182. Plaintiff is currently pursuing a Certificate of Innocence. *See, generally,* <u>Ex. 2</u>. This petition likewise contains no reference to M Sgt. Cardona or ISP. *Id.*

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a case based on "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). When moving to dismiss under Federal Rule of Procedure 12(b)(1) where "the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion…. And

the court is free to weigh the evidence to determine whether jurisdiction has been established." *Bannon v. Edgewater Med. Ctr.*, 406 F. Supp. 2d 907, 920 (N.D. Ill. 2005); *see also Remer*, 205 F.3d at 996 ("[W]hen evidence pertinent to subject matter jurisdiction has been submitted, the court may properly look beyond the jurisdictional allegations of the complaint to determine whether in fact subject matter jurisdiction exists.") (internal quotations omitted). A plaintiff bears the burden of establishing each element of standing by a preponderance of the evidence. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A court may dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) if the plaintiff fails to allege sufficient facts to state a cause of action that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded facts as true, but it must also "draw on its judicial experience and common sense" to determine if the plaintiff has stated a plausible claim for relief, and it "need not accept as true statements of law or unsupported conclusory factual allegations." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (cleaned up). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007). The complaint must allege "more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.  Plaintiff Lacks Standing to Sue M Sgt. Cardona Because Cardona Did Not Cause His Injuries.

Plaintiff lacks standing against M Sgt. Cardona because he cannot establish that his injuries are fairly traceable to him—M Sgt. Cardona was deactivated by the time Plaintiff was identified as a person of interest in the investigation, and he had no role in handling documents at RMPD.

6

To have standing to sue an individual, Plaintiff must establish there is "a causal connection between the injury" and that individual's conduct; that is, "the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . [the] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal quotation omitted). A defendant need not be the 'but-for' cause of a plaintiff's injuries at the hands of a third party (*Mass. v. EPA*, 549 U.S. 497, 524 (2007)), but "it must be substantially probable that the challenged acts of the defendant, not of some . . . third party, have led to a plaintiff's injury." *N. Tex. Equal Access Fund v. Am. First Legal Found.*, 699 F. Supp. 3d 67, 78 (D.D.C. 2023); *see also, e.g., Genskow v. Delain,* No. 20-C-731, 2020 U.S. Dist. LEXIS 191932, at *4 (E.D. Wis. Oct. 16, 2020) (Plaintiff lacked standing for civil rights claims against defendants where "they were not present at the meeting, did not take any action against her at the meeting, and did not issue the citation or detain her."). Upon a factual challenge to standing, the Court is obligated "to look behind the curtain of the complaint, and see what's there." *Bueno v. Experian Info. Sols., Inc.*, No. 22-cv-617, 2024 U.S. Dist. LEXIS 182264, at *11 (N.D. Ill. Sep. 27, 2024) (citing *Lujan*, 504 U.S. at 560-61).

Here, Plaintiff lacks standing against M Sgt. Cardona because there is no causal connection between M Sgt. Cardona and Plaintiff's injuries. Indeed, it is difficult to discern *why* Plaintiff has sued M Sgt. Cardona at all. As discussed above, Plaintiff has engaged in significant post-conviction litigation involving the full set of previously-withheld RMPD documents, produced in that matter nearly three years ago. *See* Exs 3-5. Even with the benefit of all of that discovery, Plaintiff's major post-conviction briefs never mention M Sgt. Cardona, and we have found no indication in the exhibits to those briefs that M Sgt. Cardona had any part in the withheld evidence, unlawful arrest, discrimination, failure to intervene, or conspiracy of which Plaintiff complains.

7

Rather, M Sgt. Cardona was activated by ISP to assist in the first six days of the murder investigation—from August 20, 2006, to August 26, 2006—after which he had no further participation. Ex. 1. M Sgt. Cardona does not appear to have been involved in the interviews of witnesses Gonzalez and Huizar (Ex. 2 at its Exs. 1, 2, 4, 5), and Plaintiff had not even been identified as a person of interest by the time M Sgt. Cardona was deactivated. *See People v. Taylor*, 2016 IL App (1st) 113492-UB ¶ 15; *see also* Dkt. 1 ¶ 57. And, as the lead law enforcement agency on the investigation, it was RMPD—not M Sgt. Cardona or ISP—that retained the case file eventually produced in Plaintiff's retrial. Ex. 1 at 1 ("No" is marked under "Evidence Being Hold"). Plaintiff's awareness of this reality is underscored by his post-trial briefs in the criminal matter and the allegations of his complaint. *See* Exs. 2, 3, 5, 6; Dkt. 1 ¶ 103 ("RMPD produced boxes, containers, and binders to the Rolling Meadows Courthouse for inspection."). Plaintiff is simply mistaken when he asserts that M Sgt. Cardona was an RMPD officer. Ex.1 at 2; *see also* Dkt. 79 ¶¶ 19, 22, 225 (Rolling Meadows denying that Cardona was an RMPD officer); Dkt. 78 ¶¶ 19, 22 (same for Def. Officer Cook). RMPD, not ISP or M Sgt. Cardona, retained and produced the investigative files (Exs. 2-6; Dkt. 1, ¶ 104), and Plaintiff does not allege otherwise. In short, Plaintiff's injuries are not fairly traceable to M Sgt. Cardona. He should be dismissed accordingly.

## II.  Plaintiff Has Not Stated a Claim Against M Sgt. Cardona.

Even Plaintiff had standing to sue M Sgt. Cardona, M Sgt. Cardona should be dismissed as a defendant because Plaintiff has failed to state a claim against him.

### A.  Plaintiff has not adequately alleged M Sgt. Cardona's personal involvement.

As a general matter, Plaintiff's claims fail because he has not adequately alleged that M Sgt. Cardona was personally involved in any constitutional violation. Individual liability under Section 1983 "requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (cleaned up); *Pepper v. Village of Oak Park*,

8

430 F.3d 805, 810 (7th Cir. 2005) ("[T]o be liable under Section 1983, the individual defendant must have caused or participated in a constitutional deprivation."). Merely stating that someone is sued in his individual capacity is not enough; Plaintiff must allege plausible facts sufficient to establish all elements of his claims. *Iqbal*, 556 U.S. at 678.

Where a plaintiff sues individuals who did not commit the primary, underlying alleged misconduct, he must allege facts to plausibly show that the individual was "personally involved in the constitutional violation" with "the necessary state of mind." *Bostic v. Murray*, 160 F.4th 831, 841 (7th Cir. 2025). In this respect, "failure to intervene" (Plaintiff's Count III) "is not a claim for relief; rather, it is a theory of liability under Section 1983, specifically, a way to prove the liability of a state actor who was not a direct participant in the challenged wrongdoing." *Fields v. City of Chicago*, No. 10 C 1168, 2014 U.S. Dist. LEXIS 14621, at *32-33 (N.D. Ill. Feb. 6, 2014) (*citing, e.g., Sanchez v. City of Chicago*,700 F.3d 919, 928 (7th Cir. 2012)). "It requires the plaintiff to show that a defendant who did not directly participate in the alleged constitutional wrong was aware it was happening or about to happen and had a realistic opportunity to prevent it, but instead stood by." *Id.* (*citing, e.g., Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005)). Under a failure to intervene theory, a defendant should be dismissed where there is no evidence that he had any awareness of another's constitutional violation. *Id.* (dismissing *Brady* defendants where "no evidence" that they "[were] aware that some other state actor had failed to preserve or produce anything that was exculpatory"). Plaintiff therefore "needs to establish some causal connection or affirmative link between the action complained about and the official sued." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citation omitted).

Here, as discussed above, Plaintiff's *sole* allegation specifically naming M Sgt. Cardona is that he, along with four other defendants who are or were RMPD officers, "withheld containers of

street files from their investigation into Lovings' death." Dkt. 1 ¶ 104. But this "unsupported conclusory factual allegation" is not enough to state a claim against M Sgt. Cardona. *Cooney*, 583 F.3d at 971. Moreover, this allegation is implausible under Rule 12(b)(6), because it is contradicted by the photographs of those files in Plaintiff's complaint, which show that the files were maintained by RMPD. Dkt. 1 ¶ 104. Plaintiff does not allege that ISP retained any relevant files from the investigation (*see, generally,* Dkt. 1), and his conclusory allegation that M Sgt. Cardona withheld this evidence is based solely on his mistaken allegation that M Sgt. Cardona was a RMPD officer. M Sgt. Cardona should therefore be dismissed as a defendant.

### B. Plaintiff has not stated a due process claim against M Sgt. Cardona.

Plaintiff has failed to state a due process claim against M Sgt. Cardona. In Count I, Plaintiff alleges that Defendants violated his due process rights because they "conducted a reckless investigation, withheld exculpatory evidence, withheld impeachment evidence, destroyed evidence, and fabricated false reports, false statements, false testimony, and other evidence." Dkt. 1 ¶ 185. Again, however, the only allegation against M Sgt. Cardona is that he participated in the withholding of exculpatory evidence. *Id.*, ¶ 104. This is commonly known as a *Brady* claim because it originated in *Brady v. Maryland*, 373 U.S. 83 (1963). To state a *Brady* claim, a plaintiff must show that (1) the suppressed evidence is favorable; (2) the state, either willfully or inadvertently, suppressed the evidence; and (3) the suppression resulted in prejudice. *Petty v. City of Chi.*, 754 F.3d 416, 423 (7th Cir. 2014). Evidence is "suppressed" when the state fails to disclose known evidence in time for a criminal defendant to make use of it, and it was not otherwise available to the defendant through the exercise of reasonable diligence. *Id.* Police may be liable for *Brady* violations when they fail to disclose exculpatory evidence to the prosecution under the theory set forth in *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (*Brady* obligations require a

10

prosecutor "to learn of any favorable evidence known to the others acting on the government's behalf in the case.").

Here, as explained above, Plaintiff has not stated a plausible *Brady* claim against M Sgt. Cardona because M Sgt. Cardona and ISP were not involved in the withholding of RMPD's files, and Plaintiff does not—and cannot—allege that they were. *See, e.g., Rimmer v. Holder*, 700 F.3d 246, 259 (6th Cir. 2012) (Non-prosecuting agency FBI met any *Brady* obligations by "turn[ing] over" all evidence to local police department for disclosure in the event of a state prosecution); *see also Colemon v. City of Cincinnati,* No. 21-5968, 2023 U.S. App. LEXIS 20967, at *15-18 (6th Cir. Aug. 9, 2023) (Under *Rimmer*, whether *Brady* liability is available against a non-prosecuting police department turns on its level of involvement in prosecution; non-prosecuting police department discharged its *Brady* obligations by disclosing to the prosecuting police department "all the information to which [plaintiff] points as exculpatory"). Nor has Plaintiff alleged that M Sgt. Cardona knew that any other Defendant violated his due process rights and failed to intervene. *See, e.g., Fields*, 2014 U.S. Dist. LEXIS 14621, at *32-33.

Plaintiff does not allege that M Sgt. Cardona was involved in the allegedly coercive interviews of Gonzalez and Huizar (Dkt. 1 ¶¶ 30-55), and as discussed above, Plaintiff has never argued that he was. Ex. 2. But in any case, Plaintiff was not identified as a person of interest at the time of those interviews, or at any time prior to M Sgt. Cardona's departure from the investigation. *See People v. Taylor*, 2016 IL App (1st) 113492-UB ¶ 15; *see also* Dkt. 1 ¶ 57. So it is unclear how Mr. Gonzalez's false confession or Defendant Sharkey's alleged attempt to get Gonzalez to falsely implicate someone else caused harm to Plaintiff, even if M Sgt. Cardona had been there and failed to intervene. Plaintiff would not have standing to challenge a coercive interrogation of Mr. Gonzalez, in and of itself. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 400 (2024)

11

("Article III does not allow a plaintiff to seek to vindicate someone else's injuries."). And Plaintiff's allegation that Defendant Cook "buried" these witnesses' true testimony about the perpetrator(s)' vehicle, which Plaintiff argues was exculpatory to himself, occurred in 2009 (Dkt. 1 ¶¶ 115-16)—long after M Sgt. Cardona had departed the case. Plaintiff's due process claim should be dismissed.

### C. Plaintiff has not stated a Fourth Amendment claim against M Sgt. Cardona.

Similarly, Plaintiff has failed to state a Fourth Amendment claim for deprivation of liberty without probable cause (Count II) against M Sgt. Cardona. A Fourth Amendment claim requires Plaintiff to establish that "the defendants (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Williams v. Martinez*, No. 22-cv-06602, 2023 U.S. Dist. LEXIS 166867, at *9 (N.D. Ill. Sept. 20, 2023) (internal citations omitted). Again, as in all Section 1983 claims, a plaintiff must allege that a particular defendant "cause[d] or participate[d] in" the deprivation. *Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) (affirming dismissal of Fourth Amendment claim because plaintiffs had not provided evidence demonstrating that defendant officer "had a hand in the decision to detain any of them"); *see also Padilla v. City of Chi.,* 932 F. Supp. 2d 907, 929 (N.D. Ill. 2013) (dismissing Fourth Amendment claims where no evidence that officers "took actions that led to [plaintiff's] criminal prosecution"); *Swanigan v. Trotter*, 645 F. Supp. 2d 656, 686 (N.D. Ill. 2009) (dismissing officer because he "had [no] role in causing the prosecution").

Here, Plaintiff does not explain how M Sgt. Cardona in any way caused or could have intervened in his August 2007 arrest or prosecution. Nor could he, as MCAT was deactivated weeks before Plaintiff was identified as a person of interest in the investigation, and at least a year

before Plaintiff's arrest. Accordingly, Plaintiff's Fourth Amendment claim against M Sgt. Cardona should be dismissed.

### D. Plaintiff has not stated an equal protection claim against M Sgt. Cardona.

Likewise, Plaintiff has not stated a claim for an equal protection violation against M Sgt. Cardona. To state an equal protection claim under Section 1983, a plaintiff must allege the intentional deprivation of a federal constitutional or statutory right based on her membership in a protected class. *Majeske v. Fraternal Ord. of Police, Local Lodge No. 7*, 94 F.3d 307, 311-12 (7th Cir. 1996). Conclusory allegations of generalized racial bias are insufficient to establish discriminatory intent. *Minority Police Officers Ass'n v. City of South Bend, Ind.*, 801 F.2d 964, 967 (7th Cir. 1986). For example, in *Perkins v. City of Chi.*, the court dismissed the plaintiff's equal protection claim with prejudice because there were "no facts, other than the fact that Perkins was an African-American and the officers were Caucasians, to support plaintiffs' naked assertion of the officers' racial animus." 1998 U.S. Dist. LEXIS 2249, *11 (N.D. Ill. Feb. 18, 1998).

Here, Plaintiff asserts that he is Black and that "Defendants actively participated in or personally caused misconduct in terms of conducting investigations in a manner calculated to deprive minority suspects of their due process rights by withholding material exculpatory evidence and fabricating false evidence of those suspects' guilt" which was motivated by "racial animus" that "affected minorities in a grossly disproportionate manner." Dkt. 1 ¶ 216. But Plaintiff has pled no non-conclusory facts to support these allegations against M Sgt. Cardona. As discussed above, Plaintiff has not—and cannot—establish that M Sgt. Cardona participated or failed to intervene in any deprivation of his constitutional rights. Moreover, Plaintiff's conclusory allegations of "racial animus" are insufficient against M Sgt. Cardona—or any other defendant, for that matter—as they

13

are unsupported by any non-conclusory factual allegation. For these reasons, Plaintiff's equal protection claim against M Sgt. Cardona should be dismissed.

###### E. Plaintiff has not stated a conspiracy claim against M Sgt. Cardona.

Finally, Plaintiff has not stated a claim for Section 1983 conspiracy against M Sgt. Cardona. To allege conspiracy, "a plaintiff must show (1) an express or implied agreement among defendants to deprive plaintiff of his [] constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F. 2d 437, 442 (7th Cir. 1988). Like failure to intervene, "conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008). Plaintiff must make non-conclusory allegations that M Sgt. Cardona, along with the other defendants, acted with a single plan, the general nature of which was known to each conspirator. *See Green v. Benden*, 281 F. 3d 661, 665 (7th Cir. 2002). Plaintiff has not done so here. Instead, Plaintiff asserts that "Defendants reached an agreement amongst themselves to frame Mr. Taylor for the crime." Dkt. 1, ¶ 208. But as discussed above, this allegation is not only conclusory but is implausible as to M Sgt. Cardona because Plaintiff had not been identified as a person of interest until months after M Sgt. Cardona ceased to be involved in the investigation. Accordingly, M Sgt. Cardona should be dismissed from Plaintiff's conspiracy claim.

###### F. At a minimum, M Sgt. Cardona is entitled to qualified immunity.

Finally, M Sgt. Cardona is entitled to qualified immunity, which "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A defendant is entitled to qualified immunity if (1) the alleged facts do not describe a violation of a constitutional right or (2) the federal right at

14

issue was not "clearly established at the time of the alleged violation." *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021). "The 'clearly established' standard requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him," which requires a high degree of specificity. *District of Columbia v. Wesby*, 583 U.S. 48, 63-64 (2018).

Here, Plaintiff cannot defeat either element of qualified immunity. As described above, M Sgt. Cardona did not cause any violation of Plaintiff's constitutional rights. But at a minimum, he had no "clearly established" notice that his brief, routine participation in the investigation might violate the constitutional rights of a suspect not identified until after his departure. *See, e.g., Colemon*, 2023 U.S. App. LEXIS 20967, at *15-18 (Defendant officer of non-prosecuting police department at least entitled to qualified immunity from *Brady* claim because he did not have "notice that his level of involvement in the investigation was sufficient for *Brady* to apply."). For these reasons, M Sgt. Cardona is entitled to qualified immunity.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Steven Cardona respectfully requests that this Honorable Court dismiss Plaintiff's claims against him in their entirety.

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

By: */s/ Lee Stark*
    Lee Stark
    Assistant Attorney General
    Office of the Attorney General
    115 S. LaSalle St.
    Chicago, IL 60603
    (224) 278-8343
    Lee.stark@ilag.gov
    *Counsel for Defendant Steven Cardona*

15